**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

LORD ABBETT AFFILIATED FUND, INC.; LORD
ABBETT SERIES FUND, INC. - GROWTH &
INCOME PORTFOLIO; LORD ABBETT SERIES
FUND, INC. - CLASSIC STOCK PORTFOLIO;
LORD ABBETT RESEARCH FUND, INC. - LORD
ABBETT CALIBRATED DIVIDEND GROWTH
FUND; LORD ABBETT SECURITIES TRUST -
LORD ABBETT FUNDAMENTAL EQUITY
FUND; and LORD ABBETT GLOBAL FUND, INC.
- LORD ABBETT MULTI-ASSET GLOBAL
OPPORTUNITY FUND

Plaintiffs,

    v.

AMERICAN INTERNATIONAL GROUP, INC.; et
al.,

Defendants.

</td>
<td>

Case No. 15-cv-00774 (LTS) (DCF)

Oral Argument Requested

</td></tr>
</table>

## OPPOSITION TO JOINT MOTION TO DISMISS

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Tel:     (212) 279-5050
Fax:     (212) 279-3655

*Attorneys for Lord Abbett Affiliated Fund, Inc.;*
*Lord Abbett Series Fund, Inc. - Growth & Income*
*Portfolio; Lord Abbett Series Fund, Inc. - Classic*
*Stock Portfolio; Lord Abbett Research Fund, Inc. -*
*Lord Abbett Calibrated Dividend Growth Fund;*
*Lord Abbett Securities Trust - Lord Abbett*
*Fundamental Equity Fund; And Lord Abbett Global*
*Fund, Inc. - Lord Abbett Multi-Asset Global*
*Opportunity Fund*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

I.      PROCEDURAL CONTEXT AND CONTESTED ISSUES ...............................................1

II.     PLAINTIFFS INCORPORATE ARGUMENTS
        ALREADY BEFORE THE COURT ...............................................................2

III.    STATEMENT OF FACTS AND SUMMARY OF
        ALLEGATIONS ...............................................................................3

IV.     ADDITIONAL ARGUMENT ..........................................................................3

        A.    PLAINTIFFS' SECURITIES AND EXCHANGE
              ACT CLAIMS ARE NOT BARRED BY ANY
              STATUTES OF REPOSE...............................................................3

              1.    Plaintiffs' Claims Were Timely Brought And Satisfy
                    Any Arguably Applicable Statute Of Repose ...............................................4

                    a.    Plaintiffs' Rights Of Action Were Timely Brought Within 5 Years
                          Of The "Violation" ....................................................... 5

                    b.    Plaintiffs' Rights Of Action Cannot Be Extinguished Now That
                          Plaintiffs Have Opted-Out ................................................ 5

              2.    *IndyMac* Does Not Apply To this Proceeding...............................................8

                    a.    *IndyMac* Is Inapposite Because Plaintiffs Are Not Seeking To
                          "Toll" The Statute Of Repose ........................................... 9

                    b.    *IndyMac* Only Applies When The Representative Plaintiff Lacked
                          Standing To Bring Class Members' Claims ............................... 11

                    c.    *IndyMac* Is Wrongly Decided...................................... 12

              3.    Any 5-Year Statute Of Repose Applicable To
                    Plaintiffs' Exchange Act Rights Of Action Runs
                    From The Date Defendants' Fraud Ended ................................12

        B.    SLUSA DOES NOT PRECLUDE PLAINTIFFS'
              STATE COMMON LAW FRAUD CLAIM .......................................................13

              1.    This Proceeding And The Settled Consolidated Class
                    Action Are Not A Single Action..............................................14

              2.    Defendants' Authorities Based On Consolidated,
                    Joined, Or MDL Proceedings Are Inapposite.............................................15

              3.    Barring The Lord Abbett Funds' State Law Claim
                    Would Be Inconsistent With SLUSA's Purpose .......................................17

      C.     PLAINTIFFS ADEQUATELY PLEAD
             RELIANCE FOR THE STATE COMMON LAW
             FRAUD CLAIM ................................................................................................18

V.     CONCLUSION..............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Case**                                                           **Page(s)**

*Adams Pub. Sch. Dist. v. Asbestos Corp.,*
   7 F.3d 717 (8th Cir. 1993) ..............................................................................7

*Allstate Ins. Co. v. Ace Sec. Corp.,*
   No. 650431/2011, 2013 WL 1103159, 2013 N.Y. Misc. LEXIS 3531
   (N.Y. Sup. Ct. Mar. 14, 2013) ......................................................................18

*AMBAC Assurance Corp. v. First Franklin Fin. Corp.,*
   No. 651217/2012, 975 N.Y.S.2d 707; 2013 N.Y. Misc. LEXIS 3092
   (N.Y. Sup. Ct. July 18, 2013) ......................................................................18

*American Pipe & Constr. Co. v. Utah,*
   414 U.S. 538 (1974) .........................................................................4, 6, 10, 11

*Amorosa v. Ernst & Young LLP,*
   682 F. Supp. 2d 351 (S.D.N.Y. 2010)..........................................................16

*Arivella v. Lucent Techs., Inc.,*
   623 F. Supp. 2d 164 (D. Mass. 2009) .............................................................6

*Bensinger v. Denbury Res., Inc.,*
   31 F. Supp. 3d 503 (E.D.N.Y. 2014) ............................................................11

*Brown v. City of Oneonta,*
   235 F.3d 769 (2d Cir. 2000)..........................................................................22

*Caldwell v. Berlind,*
   54 F. App'x 37 (2d Cir. 2013) ......................................................................11

*Crown, Cork & Seal Co. v Parker,*
   462 U.S. 345 (1983)........................................................................................7

*Devaney v. Chester,*
   709 F. Supp. 1255 (S.D.N.Y. 1989)..............................................................20

*Doehla v. Wathne Ltd., Inc.,*
   No. 98 Civ. 6087, 1999 WL 566311, 1999 U.S. Dist. LEXIS 11787
   (S.D.N.Y. Aug. 3, 1999) ..............................................................................19

*Edwards v Boeing Vertol Co.,*
   717 F.2d 761 (3d Cir. 1983)...........................................................................7

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974).......................................................................................7

*Emergent Capital Inv. Mgmt, LLC v. Stonepath Group, Inc.*,
   343 F.3d 189 (2d Cir. 2003)........................................................................................19

*Fulghum v. Embarq Corp.*,
   778 F.3d 1147 (10th Cir. 2015) .................................................................................5

*Gordon Partners v. Blumenthal*,
   No. 02 Civ. 07377, 2007 WL 1438753, 2007 U.S. Dist. LEXIS 35895
    (S.D.N.Y. May 16, 2007).........................................................................................15

*Hunt v. Enzo Biochem, Inc.*,
   530 F. Supp. 2d 580 (S.D.N.Y. 2008)....................................................................19, 21

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
   No. 03 MD 01529, 2009 WL 2407835, 2009 U.S. Dist. LEXIS 68812
    (S.D.N.Y. Aug. 5, 2009) ..........................................................................................15

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
   741 F. Supp. 2d 511 (S.D.N.Y. 2010)......................................................................21

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   No. 12 Civ. 5210 (PKC), 2013 WL 6504801, 2013 U.S. Dist. LEXIS 176295
    (S.D.N.Y. Dec. 11, 2013)..........................................................................................16

*In re Bear Stearns Cos. Inc. Sec., Deriv. and ERISA Litig.*,
   995 F. Supp. 2d 291 (S.D.N.Y. 2014).......................................................................21

*In re Citigroup Inc. Sec. Litig.*,
   987 F. Supp. 2d 377 (S.D.N.Y. 2013)...................................................................15, 16

*In re Comverse Tech., Inc.*,
   543 F. Supp. 2d 134 (E.D.N.Y. 2008) ......................................................................13

*In re Fannie Mae 2008 Sec. Litig.*,
   891 F. Supp. 2d 458 (S.D.N.Y. 2012).......................................................................16

*In re Merck & Co.*,
   2012 U.S. Dist. LEXIS 180707 (D. N.J. Dec. 20, 2012).........................................6

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
   23 F. Supp. 3d 203 (S.D.N.Y. 2014).........................................................................11

*In re Pfizer Inc. Sec. Litig.*,
   584 F. Supp. 2d 621 (S.D.N.Y. 2008).......................................................................21

*In re Refco Inc. Sec. Litig.*,
   859 F. Supp. 2d 644 (S.D.N.Y. 2012).......................................................................15

iv

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011)................................................................6, 7, 10, 21

*Joseph v. Wiles*,
    223 F.3d 1155 (10th Cir. 2000) ........................................................................5, 6, 10

*Knight Secs., LP v. Fiduciary Trust Co.*,
    5 A.D.3d 172 (1st Dept. 2004).................................................................................18

*Lampf, Pleva, Lipkin, Prupis & Petigrow v. Gilbertson*,
    501 U.S. 350 (1991)...............................................................................................9, 13

*Landesbank Baden-Wurttemberg v. RBS Holdings USA Inc.*,
    14 F. Supp. 3d 488 (S.D.N.Y. 2014)........................................................................20

*Matana v. Merkin*,
    989 F. Supp. 2d 313 (S.D.N.Y. 2013).....................................................................20

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)..................................................................................................13

*Maine St. Ret. Sys. v. Countrywide Fin. Corp.*,
    722 F. Supp. 2d 1157 (C.D. Cal. 2010) .....................................................................6

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)........................................................................................13, 14, 17

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
    288 F.R.D. 290 (S.D.N.Y. 2013) ...............................................................................6

*N.Y. City Employees' Ret. Sys. v. BP P.L.C.*,
    2014 U.S. Dist. LEXIS 138920 (S.D. Tex. Sept. 30, 2014) .......................................6

*P. Stoltz Family P'Ship L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004)..........................................................................................5

*Plumbers' & Pipefitters' Local #562 Supp. Plan & Trust v. J.P. Morgan Acceptance Corp. I*,
    2011 U.S. Dist. LEXIS 152695 (E.D.N.Y. Dec. 13, 2011) ........................................6

*Police & Fire Ret. Sys. of the City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013)............................................................................8, 9, 10, 11

*Prudential Ins. Co. of America v. Bank of America*,
    14 F. Supp. 3d 591 (D. N.J. 2014) .............................................................................6

*Realmonte v. Reeves*,
    169 F.3d 1280 (10th Cir. 1999) ..................................................................................7

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004).........................................................................20

*Salix Capital U.S. Inc. v. Banc of Am. Sec. LLC,*
    2013 U.S. Dist. LEXIS 181158 (S.D.N.Y. Dec. 30, 2013) ................................11

*Sawabeh Info. Servs. Co. v. Brody,*
    832 F. Supp. 2d 280 (S.D.N.Y. 2011)..........................................................18

*Schlaifer Nance & Co. v. Estate of Warhol,*
    119 F.3d 91 (2d Cir. 1997)...........................................................................18

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010).....................................................................................10

*Sibbach v. Wilson & Co.,*
    312 U.S. 1 (1941)........................................................................................10

*Smith v. Bayer Corp.,*
    131 S. Ct. 2368 (2011).................................................................................11

*Take-Two Interactive Software, Inc. v. Brant,*
    2010 U.S. Dist. LEXIS 32120 (S.D.N.Y. Mar. 31, 2010) ................................13

*Terra Sec. ASA Knkursbo v. Citigroup, Inc.,*
    740 F. Supp. 2d 441 (S.D.N.Y. 2010)...........................................................20

*Transit Rail, LLC v. Marsala,*
    No. 05-cv-0564, 2007 WL 2089273, 2007 U.S. Dist. LEXIS 52822
    (W.D.N.Y. July 20, 2007)..............................................................................19

*Ventura v. AT&T Corp.,*
    No. 05 Civ. 05718, 2006 WL 2627979, 2006 U.S. Dist. LEXIS 65277
    (S.D.N.Y. Sept. 13, 2006)..............................................................................14

**Statutes, Rules and Regulations**

Fed. R. Civ. P. 15(a)(2)......................................................................................22

H.R. Rep. No. 105-640 .................................................................................17, 18

SLUSA § 2(5), 112 Stat. 3227 ..........................................................................17

S. Rep. No. 105-182 (1998) ...............................................................................17

15 U.S.C. § 77p(f)(2)(A)(ii)................................................................................14

15 U.S.C. § 77m..................................................................................................4

15 U.S.C. § 78bb(f)(5)(B)(ii) .................................................................................13, 14

28 U.S.C. § 1407 ........................................................................................................16

28 U.S.C. § 1658 ..........................................................................................................4

28 U.S.C. § 2072(b) ...........................................................................................8, 9, 10

Plaintiffs, Lord Abbett Affiliated Fund, Inc.; Lord Abbett Series Fund, Inc. - Growth & Income Portfolio; Lord Abbett Series Fund, Inc. - Classic Stock Portfolio funds; Lord Abbett Research Fund, Inc. - Lord Abbett Calibrated Dividend Growth Fund; Lord Abbett Securities Trust - Lord Abbett Fundamental Equity Fund; and Lord Abbett Global Fund, Inc. - Lord Abbett Multi-Asset Global Opportunity Fund (together the "Lord Abbett Funds" or "Plaintiffs"), respectfully submit this Opposition to Joint Motion to Dismiss filed by Defendant American International Group Inc.'s ("AIG" or the "Company") on behalf of all Defendants.  (Dkt. No. 28, the "Joint Motion").

I.    **PROCEDURAL CONTEXT AND CONTESTED ISSUES**

As Defendants note in their Joint Motion, this proceeding alleges the same rights of action (against the same Defendants) on behalf of Plaintiffs that were brought on behalf of a putative class that included Plaintiffs in the Consolidated Class Action.[1]  After the Class was provisionally certified by this Court in its Order dated October 7, 2014, Plaintiffs timely submitted requests for exclusion from the preliminarily approved Consolidated Class Action Settlement and then filed their Complaint in this proceeding on February 2, 2015.   This proceeding also alleges rights of action for state common law fraud.[2]

As Defendants also note in their Joint Motion, the opt-out claims and common law fraud claims filed by Plaintiffs in this proceeding are the same as have been alleged by plaintiffs in other "Opt-Out Actions" (as defined by Defendants, Joint Motion at 1, n.3).  Defendants have already fully briefed their motions to dismiss the other Opt-Out Actions, on the same grounds as

---

[1] *In re American International Group, Inc. 2008 Sec. Litig.*, Case No. 1:08-cv-4772-LTS-DCF (S.D.N.Y.), herein the "Consolidated Class Action."

[2] Plaintiffs' rights of action for state common law fraud are alleged only against Defendant AIG, with those same claims against Defendants Sullivan, Bensinger, Cassano, Forster, Herzog and Lewis having been voluntarily dismissed.

they move to dismiss Plaintiffs' rights of action in this proceeding.  *See* Joint Motion at 2.

Specifically, Defendants move to dismiss Plaintiffs' rights of action on the grounds that: (1) Plaintiffs' rights of action under the Securities Act of 1933 (the "Securities Act") and Securities Exchange Act of 1934 (the "Exchange Act") are barred in whole or in part by applicable statutes of repose; and (2) Plaintiffs' rights of action under state common law (i) are precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), and (ii) should be dismissed for failure to plead particularized facts demonstrating direct reliance. Notably, Defendants do not move to dismiss Plaintiffs' rights of action against Defendant AIG for alleged violations that occurred after **February 8, 2008**, and thus most of Plaintiffs' claims shall survive and proceed regardless of the outcome of Defendants' Joint Motion.

## II.    PLAINTIFFS INCORPORATE ARGUMENTS ALREADY BEFORE THE COURT

Throughout the briefing on Defendants' motions to dismiss the Opt-Out Actions and this Joint Motion, the parties have been adopting and incorporating arguments made by others for the sake of efficiency and to avoid needless repetition.  Accordingly, Plaintiffs hereby adopt and incorporate the arguments made in Plaintiffs' Omnibus Opposition To Defendants' Joint Omnibus Motion To Dismiss On Timeliness Grounds, as submitted in the related Opt-Out Actions (herein, the "Omnibus Opposition," *see Kuwait Inv. Auth. v. Am. Int'l Group, Inc.*, No. 11-cv-08403-LTS-DCF (S.D.N.Y.), Dkt. 53), as well as the Memorandum of Opposition to Defendants' Motion to Dismiss, as submitted in the *British Coal* Action (the "*British Coal* Opposition," *see British Coal Staff Superannuation Scheme v. American International Group, Inc.*, No. 12-CV-4555(LTS)(DCF) (S.D.N.Y.), Dkt. 63).  Copies of the Omnibus Opposition and the *British Coal* Opposition are attached hereto respectively as Exhibit A and Exhibit B to the Declaration of Mitchell M.Z. Twersky ("Twersky Decl.").

2

## III.   STATEMENT OF FACTS AND SUMMARY OF ALLEGATIONS

In this proceeding, Plaintiffs bring rights of action for violations of: (i) Section 10(b) of the Exchange Act against Defendants AIG and the Section 10(b) Defendants;[3] (ii) Section 20(a) of the Exchange Act against the Executive Defendants; (iii) Section 11 of the Securities Act against Defendants AIG, the Signing Executive Defendants, the Director Defendants, and the Underwriter Defendants; (iv) Section 12(a)(2) of the Securities Act against the Underwriter Defendants; (v) Section 15 of the Securities Act against the Executive Defendants; and (vi) common law fraud against Defendant AIG.   These rights of action are the same as were alleged on Plaintiffs' behalves in the Consolidated Class Action.  *See* Joint Motion at 5 ("Lord Abbett's Complaint is a near carbon copy of the Class Action complaint.").

The Omnibus Opposition, as incorporated, provides a "SUMMARY OF PLAINTIFFS' ALLEGATIONS" further detailing the basis of Plaintiffs' rights of action, as alleged in the Consolidated Class Action and as alleged here in this proceeding.  *See* Omnibus Opposition at 3-11, Twersky Decl. Exh. A.

## IV.   ADDITIONAL ARGUMENT

### A.   PLAINTIFFS' SECURITIES AND EXCHANGE ACT CLAIMS ARE NOT BARRED BY ANY STATUTES OF REPOSE

In addition to the arguments adopted and incorporated from the Omnibus Opposition, Plaintiffs respectfully submit that their claims are timely and cannot be extinguished by any statute of repose for the reasons set forth herein.

---

[3] Each group of Defendants, including the "Section 10(b) Defendants," "Executive Defendants," the "Signing Executive Defendants," the "Director Defendants," and the "Underwriter Defendants," are as defined in the Complaint in this proceeding.

### 1.   Plaintiffs' Claims Were Timely Brought And Satisfy <u>Any Arguably Applicable Statute Of Repose</u>

As set forth above, Plaintiffs are pursuing rights of action under the Exchange Act and the Securities Act.  Plaintiffs' rights of action under the Exchange Act "may be brought not later than the earlier of – (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658.  And, under Section 13 of the Securities Act, "[i]n no event shall any . . . action be brought to enforce a liability created under [Section 11] more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m.  Courts have held that Section 13 of the Securities Act is a statute of repose, and Defendants' have argued that the 5-year limitation to bring a right of action under the Exchange Act is similarly a statute of repose.  Regardless of whether Defendants' are correct, ***<u>any</u>*** statute of repose applicable to Plaintiffs' rights of action in this proceeding have been satisfied.

Plaintiffs' rights of action were timely brought before the Court within five years of all alleged Exchange Act violations and within three years of all alleged Securities Act violations by virtue of the Consolidated Class Action, in which the representative plaintiffs timely brought rights of action on behalf of a putative class that included Plaintiffs.  Following certification of that putative class, Plaintiffs exercised their right to opt-out of the Class and pursue their individual rights of action in this proceeding – which are the exact same rights of action, related to the exact same securities, as were brought before the Court in the Consolidated Class Action. Under *American Pipe*[4] and its progeny, the commencement of the Consolidated Class Action prevents Plaintiffs' respective rights of action from being extinguished by any statute of repose.

---

[4] *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

> **a.      Plaintiffs' Rights Of Action Were Timely Brought Within 5
> Years Of The "Violation"**

A statute of repose defines the time allowed to initiate a suit for claims against a defendant.  *See P. Stoltz Family P'Ship L.P. v. Daum*, 355 F.3d 92, 102-103 (2d Cir. 2004) ("… statutes of repose affect the availability of the underlying right: That right is no longer available on the expiration of the specified period of time." (citations omitted)); *see also Fulghum v. Embarq Corp.*, 778 F.3d 1147, 1166 (10th Cir. 2015) ("Statutes of repose are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished.").  Plaintiffs' rights of action under both the Exchange Act and Securities Act were brought against AIG by virtue of the Consolidated Class Action.  There is no dispute that the Consolidated Class Action was timely brought within any applicable statute of repose.  Because Plaintiffs were members of the putative class in the Consolidated Class Action, their rights of action were brought when the Consolidated Class Action commenced – well within any applicable statute of repose.

> **b.      Plaintiffs' Rights Of Action Cannot Be Extinguished Now
> That Plaintiffs Have Opted-Out**

In *Joseph v. Wiles*, 223 F.3d 1155, 1167-68 (10th Cir. 2000), the Tenth Circuit held that a statute of repose does not extinguish the individual claims of putative class members when those claims have been timely brought before the court in a representative class action, even if those claims are individually asserted after the repose period has run.  In *Joseph,* defendants argued that a represented class member plaintiff could not assert his individual claims because the applicable statute of repose had run and could not be tolled under *American Pipe*.  In denying defendants' arguments, the Tenth Circuit found that application of the "*American Pipe* tolling doctrine" in such circumstances "did not involve 'tolling' at all;" but rather, the plaintiff's claims were timely brought within the statue of repose by virtue of the class action.  *Id.* at 1168.

As explained by the Tenth Circuit, the statute of repose was satisfied because the plaintiff had "effectively been a party to an action against defendants since a class action covering him was requested but never denied." *Id.* (citations omitted).  The statute of repose was satisfied for plaintiff and all other putative class members because defendants were on notice "of the substantive claim as well as the number and generic identities of potential plaintiffs" on whose behalf rights of action had been asserted in the class action.  *Id.; accord American Pipe*, 414 U.S. at 555.

The Tenth Circuit's reasoning and holding has been adopted and followed by several other courts, including in this District.[5]  Indeed, in *Int'l Fund Mgmt. S.A. v. Citigroup, Inc.* – in a circumstance nearly identical to this proceeding – the court followed *Joseph* and applied *American Pipe* to allow a class member who had opted-out of a class action to bring individual claims over defendants' objection that such claims had been extinguished by the applicable statute of repose.  *Citigroup*, 822 F. Supp. 2d at 380-381.   The court held that in such cases where a class member opts-out of a class action, the statute of repose is not being tolled or modified – rather, "in a sense, application of the *American Pipe* tolling doctrine [to the statute of repose] … does not involve 'tolling' at all."  *Id.* at 381.

Accordingly, *Citigroup* held that "the pending class action prevented the statute of repose from extinguishing defendants' potential liability" to the opt-out plaintiffs, and that "liability

---

[5] *See, e.g., Int'l Fund Mgmt. S.A. v. Citigroup, Inc.*, 822 F. Supp. 2d 368, 380-381 (S.D.N.Y. 2011); *N.J. Carpenters Health Fund v. Residential Capital, LLC,* 288 F.R.D. 290, 294 (S.D.N.Y. 2013); *Plumbers' & Pipefitters' Local #562 Supp. Plan & Trust v. J.P. Morgan Acceptance Corp. I*, 2011 U.S. Dist. LEXIS 152695, at *16-17 (E.D.N.Y. Dec. 13, 2011); *Prudential Ins. Co. of America v. Bank of America*, 14 F. Supp. 3d 591, 618 (D. N.J. 2014); *In re Merck & Co.*, 2012 U.S. Dist. LEXIS 180707, at *44 (D. N.J. Dec. 20, 2012); *Maine St. Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166-67 (C.D. Cal. 2010); *Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 177 (D. Mass. 2009); *N.Y. City Employees' Ret. Sys. v. BP P.L.C.*, 2014 U.S. Dist. LEXIS 138920, at *13-14 (S.D. Tex. Sept. 30, 2014).

should not now be extinguished" simply because plaintiffs opted-out of a class action and commenced their own individual lawsuits. *Id.* at 381. This holding in *Citigroup* is consistent with the Supreme Court's decisions in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) and *Crown, Cork & Seal Co. v Parker*, 462 U.S. 345, 351-52 (1983), which found that allowing a limitations period to run while a class action is pending would render Rule 23 and a class member's "right to pursue individual claims meaningless."  *Realmonte v. Reeves*, 169 F.3d 1280, 1284 (10th Cir. 1999).

Indeed, a number of Circuit Courts have relied on *Eisen* and *Crown, Cork* to find that the *American Pipe* doctrine applies equally to class members who opt-out of a certified class as it does to class members who are no longer participating in a class action due to an adverse class certification decision. *See, e.g., Realmonte*, 169 F.3d at 1284 ("we hold that the fact that [plaintiff's] participation in the class action terminated with a decision to opt out of a certified class rather than with the denial of class certification is irrelevant to the applicability of the *American Pipe* tolling rule"); *Adams Pub. Sch. Dist. v. Asbestos Corp.*, 7 F.3d 717, 718 n.1 (8th Cir. 1993) ("The fact that [plaintiff's] participation ended with a decision to 'opt out' rather than with denial of class certification is irrelevant to applicability of the *American Pipe* rule"); *Edwards v Boeing Vertol Co.*, 717 F.2d 761, 766 (3d Cir. 1983) (finding a distinction between opting-out of certified class and class certification being denied "would make no sense" in terms of *American Pipe*, and that reliance on the pendency of a certified class action "is more reasonable" than relying on an uncertified class).

Here, there is no dispute that Plaintiffs' rights of action, under both the Exchange Act and the Securities Act, were part of putative class being represented in the Consolidated Class Action that was provisionally certified by the Court on October 7, 2014. Plaintiffs thereafter opted-out

of that certified Class and continued with the prosecution of their rights of action with the filing of their opt-out Complaint.   As in *Joseph* and *Citigroup*, Plaintiffs' rights of action are not extinguished by any statute of repose because they are "the same claims" in connection with the "same securities" as timely brought in the Consolidated Class Action.   Accordingly, any statute of repose that applies to Plaintiffs' rights of action is satisfied, and does not need to be "tolled." As set forth below, Plaintiffs are not seeking to "toll" a statute of repose or modify or abridge Defendant's substantive rights, and thus the Rules Enabling Act, 28 U.S.C. § 2072(b), is not being encroached.

### 2.   *IndyMac* Does Not Apply To this Proceeding

Defendant's argument that a portion of Plaintiffs' 10(b) rights of action are time-barred by an applicable statute of repose is wholly dependent on the Second Circuit's decision in *Police & Fire Ret. Sys. of the City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) (herein, "*IndyMac*").  *IndyMac*, however, does not apply to Plaintiffs' rights of action.

In *IndyMac*, members of a putative class sought to intervene as named plaintiffs in order to revive claims that were dismissed for want of jurisdiction based on the initial representative's lack of standing to assert those claims.   The district court held that because the sole representative plaintiff lacked standing, the intervening class members' rights of action were not before the court by virtue of the representative class action.  *Id.* As a result, the claims of the intervenors were untimely, having been extinguished by the applicable statute of repose.   On appeal, the intervenors argued that their claims were timely, either because (1) the statute of repose was tolled under *American Pipe*; or (2) their claims related-back to the commencement of the representative class action.  *Id.*

The Second Circuit rejected the intervenors' arguments, holding: (1) *American Pipe*'s tolling rule does not apply to the three-year statute of repose in Section 13 of the Securities Act

of 1933; and (2) absent circumstances that would render newly asserted claims independently timely, neither Federal Rule of Civil Procedure 24 nor the Rule 15(c) "relation back" doctrine permits members of a putative class, who are not named parties, to intervene in the class action as named parties in order to revive claims that were dismissed from the class for want of jurisdiction. *Id.* at 100-01.

Neither of *IndyMac*'s two holdings is applicable here, as Plaintiffs are not seeking to extend the statute of repose to bring new claims; nor are they trying to bring "new" claims or revive claims that were not previously before the court due to a lack of standing.

### a.  *IndyMac* Is Inapposite Because Plaintiffs Are Not Seeking To "Toll" The Statute Of Repose

In *IndyMac*, the Second Circuit held that the *American Pipe* tolling doctrine could not apply to the statute of repose, regardless of whether such tolling should be classified as "equitable" or "legal" tolling. *Id.* at 109.  As stated in *IndyMac*, "equitable" tolling of the statute of repose is barred by the Supreme Court's decision in *Lampf, Pleva, Lipkin, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).  *See IndyMac*, 414 U.S. at 109.  And, according to *IndyMac*, "legal" tolling is barred under the Rules Enabling Act, 28 U.S.C. § 2072(b), to the extent such tolling extends an applicable statute of repose.  *See IndyMac*, 414 U.S. at 109.

In this case, as set forth above (*supra*, §IV.A.1.), Plaintiffs are not seeking to "toll" or "extend" a statute of repose.  Rather, Plaintiffs' assert that their rights of action were timely brought before the court by virtue of the representative Consolidated Class Action.  Because this rule of law is established in *American Pipe*, it is often referred to and encompassed by the "*American Pipe* tolling doctrine;" in essence, however, as explained in *Joseph* and *Citigroup* (and a host of other cases, *see, supra,* fn. 5), its application does not involve any "tolling" at all. In contrast, the intervenors in *IndyMac* were seeking to toll or extend the statute of repose to file

9

"new" claims because they could not assert that their rights of action were already brought through the representative action.  *See IndyMac*, 414 U.S. at 111, n. 21, 22 (citing cases that there can be no class action when the representative plaintiff lacks standing because federal jurisdiction never attaches).

Furthermore, in this circumstance, application of the *American Pipe* tolling doctrine – which, again, is not really "tolling," particularly in the context of a certified class action as exists here – does not modify Defendant's substantive rights or otherwise encroach upon the Rules Enabling Act.  As explained in *Citigroup*, the statutes of repose do not extinguish the individual claims of a putative class member when that class member opts-out and files "the same claims" in connection with "the same securities" in an opt-out proceeding.  *Citigroup*, 822 F. Supp. 2d at 380-81.  This is because the scope of Defendant's liability is now the same as it was when the Consolidated Class Action was filed. *See American Pipe*, 414 U.S. at 555 (a representative class action "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs"); *accord Citigroup*, 822 F. Supp. 2d at 380-81 (quoting *Joseph*, 223 F.3d at 1168).

As further set forth in the Omnibus Opposition, applying the *American Pipe* doctrine to allow Plaintiffs' rights of action to proceed in this proceeding, where Plaintiffs' same rights of action were timely brought in the representative Consolidated Class Action, would not violate the Rules Enabling Act, 28 U.S.C. § 2072(b), but rather merely "regulate procedure" under the standard articulated by the Supreme Court in *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14 (1941) and the plurality in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010).  *See* Omnibus Opposition at 24-25, Twersky Decl. Exh. A.  Under *American Pipe* and its progeny, Rule 23 provides that as a matter of procedure the rights of action of non-named class

10

members are deemed to have been brought as of the filing of a class action complaint that asserts claims on their behalf. *See American Pipe*, 414 U.S. at 551 ("Thus, the commencement of the [class] action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for all named plaintiffs."); *see also Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2380 n. 10 (2011) (finding that *American Pipe* demonstrates that "a person not a party to a class suit may receive certain benefits … related to that proceeding").

**b.**   ***IndyMac* Only Applies When The Representative Plaintiff Lacked Standing To Bring Class Members' Claims**

*IndyMac* does not disrupt *American Pipe*'s holding that class members' rights of action are deemed to be brought at the filing of a representative class action. Rather, *IndyMac* deals with those instances where the claims at issue were not asserted by a class representative with standing. In fact, the Second Circuit stated explicitly that its *IndyMac* decision "**implicates only those claims and defendants as to which [the representative plaintiff] would lack standing**." *IndyMac*, 721 F.3d at 111, n.19 (emphasis added).

The "*IndyMac*" cases cited by Defendant support this distinction. For example, in *In re Morgan Stanley Mortg. Pass-Through Cert. Litig.*, 23 F. Supp. 3d 203, 207 (S.D.N.Y. 2014), this Court applied *IndyMac* to deny intervening class members from adding new claims for which the initial representative lacked standing. In *Caldwell v. Berlind*, 54 F. App'x 37, 39-40 (2d Cir. 2013), the Second Circuit applied *IndyMac* to dismiss new claims brought in an amended complaint after the repose period. In *Salix Capital U.S. Inc. v. Banc of Am. Sec. LLC*, 2013 U.S. Dist. LEXIS 181158, at *36, n.12 (S.D.N.Y. Dec. 30, 2013), plaintiffs conceded that *IndyMac* precluded them from bringing new claims unless *IndyMac* was to be "reversed by the Supreme Court." And, in *Bensinger v. Denbury Res., Inc.,* 31 F. Supp. 3d 503, 510-11 (E.D.N.Y. 2014),

11

the court applied *IndyMac* to prevent a class action plaintiff from adding a new claim after the statue of repose period had expired.

In this case, the representative plaintiff in the Consolidated Class Action had standing to assert Plaintiffs' rights of action – the exact same rights of action as alleged here – and it did, well within any applicable statute of repose.

**c.      *IndyMac* Is Wrongly Decided**

To the extent that this Court finds that Plaintiffs' claims in this proceeding are untimely and have been extinguished by an applicable statue of repose under *IndyMac*, Plaintiffs assert that *IndyMac* has been wrongly decided and conflicts with well-settled U.S. Supreme Court precedent as set forth herein and in the Omnibus Opposition incorporated herein by reference. Plaintiffs hereby preserve such arguments for appeal.

**3.      Any 5-Year Statute Of Repose Applicable To Plaintiffs' Exchange Act Rights Of Action Runs From The Date Defendants' Fraud Ended**

Defendant AIG concedes that by virtue of its tolling Agreement with Plaintiffs, Plaintiffs' rights of action against AIG for violations of the Exchange Act after February 8, 2008 are timely. As set forth in the Omnibus Opposition, however, AIG's violations of the Exchange Act were part of a related series of fraudulent misrepresentations that comprised a single fraudulent scheme.  *See* Omnibus Opposition at §I.A., Twersky Decl. at Exh. A.  The Omnibus Opposition explains further that because AIG's false and misleading statements were part of a related series of misrepresentations, any applicable statute of repose would run from the last misrepresentation. *Id.*  As such, Plaintiffs' claims against AIG for violating Section 10(b) of the Exchange Act would be timely with respect to each and every false and misleading statement or omission alleged in the Complaint by virtue of its Tolling Agreement.

12

Moreover, to the extent that there is any question as to whether the alleged misstatements are part of a series, the Court should "await further development of the record and of the parties' legal positions on the issue" before determining whether the claims based on earlier misrepresentations were timely – and, in any event, that determination is not appropriately made at the pleading stage.  *Id.* (citing *Take-Two Interactive Software, Inc. v. Brant*, 2010 U.S. Dist. LEXIS 32120, at *19 (S.D.N.Y. Mar. 31, 2010) and *In re Comverse Tech., Inc.*, 543 F. Supp. 2d 134, 155 (E.D.N.Y. 2008)).

As further explained in the Omnibus Opposition, this approach to measuring when the five-year limitations period should run is consistent with Supreme Court precedent, and is **not** foreclosed by its decisions in *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) and *Lampf*, 501 U.S. 350.  *See* Omnibus Opposition at §I.B., Twersky Decl. at Exh. A.

For these reasons, and as previously stated, Plaintiffs adopt and incorporate the arguments set forth in the Omnibus Opposition, and particularly §§I.A and I.B., in support of these positions.

## B.   SLUSA DOES NOT PRECLUDE PLAINTIFFS' STATE COMMON LAW FRAUD CLAIM

Contrary to Defendants' assertions, this proceeding is not a "covered class action" precluded by SLUSA.  Under Title I of SLUSA, "[n]o covered class action based upon the statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1).  As the Supreme Court has noted, "SLUSA does not actually pre-empt any state cause of action."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87 (2006).  Rather, the statute "simply denies

plaintiffs the right to use the class-action device to vindicate certain claims;" it "does not deny any individual plaintiff . . . the right to enforce any state-law cause of action that may exist." *Id.*

### 1.   This Proceeding And The Settled Consolidated Class Action Are Not A Single Action

SLUSA defines the term "covered class action" as any "group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 77p(f)(2)(A)(ii); 15 U.S.C. § 78bb(f)(5)(B)(ii). Because this case is not "joined, consolidated, or otherwise proceed[ing] as a single action for any purpose" with the Consolidate Class Action, which is no longer pending, (or any other action, including the other individual opt-out actions) the Lord Abbett Funds' state-law claims are not precluded by SLUSA.

The Consolidation Order in the Consolidated Class Action expressly limited the scope of consolidation to newly filed or transferred class actions, and did not extend to individual actions such as this proceeding. *See* Dkt No. 81, Order at 10, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 08 Civ. 04772 (S.D.N.Y. March 20, 2009) ("When a *class action* that relates to the same subject matter as the Consolidated Securities Action is hereafter filed in or transferred to this Court . . . it shall be consolidated with these actions.") (emphasis added). Moreover, it is undisputed that Plaintiffs have not stipulated to any form of consolidation with the settled Consolidated Class Action, nor has this proceeding been consolidated with the Consolidated Class Action pursuant to judicial order, statute, or order of the Judicial Panel on Multidistrict Litigation ("JPML").

Absent formal consolidation or joinder, cases that are proceeding on "separate procedural track[s]," are not considered "a single action" for purposes of SLUSA. *Ventura v. AT&T Corp.*, No. 05 Civ. 05718, 2006 WL 2627979, at *1, 2006 U.S. Dist. LEXIS 65277, at *3 (S.D.N.Y.

Sept. 13, 2006); *see also In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MD 01529, 2009 WL 2407835, at *2, 2009 U.S. Dist. LEXIS 68812, at *13 (S.D.N.Y. Aug. 5, 2009) (same).  In fact, absent formal consolidation or joinder, courts within this Circuit have found cases to be proceeding as a "single action" under SLUSA only where the individual case at issue was transferred into and/or grouped together within a Multi-District Litigation ("MDL") master file docket.  *See In re Refco Inc. Sec. Litig.*, 859 F. Supp. 2d 644, 649 (S.D.N.Y. 2012) (because an "MDL proceeding coordinates discovery and other pretrial proceedings . . . the actions in it are accordingly proceeding as a single action" under SLUSA); *In re Citigroup Inc. Sec. Litig.*, 987 F. Supp. 2d 377, 387 (S.D.N.Y. 2013) ("[E]ven if two actions have not been formally joined or consolidated, they are proceeding 'as a single action for any purpose' within the meaning of SLUSA when they are grouped together as part of an MDL.").

This proceeding cannot be combined with any other proceeding to meet the criteria to be considered a "single action" under SLUSA because it is not formally consolidated with or joined to the Consolidated Class Action, which is no longer pending, and is not part of an MDL.  At most, this individual action is "related" to the settled Consolidated Class Action, which no court has held is sufficient to bind separate cases as a "single action" under SLUSA.

> **2.      Defendants' Authorities Based On Consolidated, Joined, Or MDL Proceedings Are Inapposite**

The authority that Defendants cite in support of their contention that this proceeding is a "covered class action" are inapposite as they address situations – not present here – where formal consolidation or joinder has occurred, or where the cases proceed as part of an MDL.  For example, Defendants rely on decisions where there were stipulations, statutes, or judicial orders formally consolidating the actions at issue.  *See, e.g., Gordon Partners v. Blumenthal*, No. 02 Civ. 07377, 2007 WL 1438753, at *3, 2007 U.S. Dist. LEXIS 35895, at *9 (S.D.N.Y. May 16,

2007) (covered class action existed where "plaintiffs stipulated to the consolidation of this action with the class action for pretrial purposes"), *aff'd* 293 F. App'x 815 (2d Cir. 2008).

The other decisions cited by Defendants involve individual actions transferred to an MDL for inclusion in already coordinated or consolidated pretrial proceedings.  *See, e.g., In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, No. 12 Civ. 5210 (PKC), 2013 WL 6504801, at *6, 2013 U.S. Dist. LEXIS 176295, at *39 (S.D.N.Y. Dec. 11, 2013) ("[C]oordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 [] falls within 'any group of lawsuits' that 'proceed[s] as a single action for any purpose,' and therefore constitutes a 'covered class action' under SLUSA"); *In re Citigroup*, 987 F. Supp. 2d at 386, 388 (two actions transferred to one court "pursuant to an order of the JPML" assigning them "for inclusion in coordinated or consolidated pretrial proceedings" and thereafter "grouped together as part of an MDL" proceed "'as a single action for any purpose' within the meaning of SLUSA"); *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 479 (S.D.N.Y. 2012) (court-ordered consolidation of cases within MDL triggered SLUSA); *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 375-76 (S.D.N.Y. 2010) (individual action "proceeded as a single action" with class action and other opt-out actions where all cases were proceeding within an MDL and where the individual action was being prosecuted jointly with the numerous other opt-out cases on behalf of hundreds of investors represented by the same counsel).  None of these decisions address the situation where, as here, a proceeding is merely "related" to, but not consolidated with a class action that is no longer pending, not coordinated as part of an MDL, and not consolidated with the other individual actions.

**3.      Barring The Lord Abbett Funds' State Law Claim
Would Be Inconsistent With SLUSA's Purpose**

Precluding the Lord Abbett Funds' common law fraud claims would also be inconsistent

with SLUSA's purpose.  SLUSA was intended to stem the shift in private securities class action

litigation from federal to state court that occurred in response to Congress's passage of the

Private Securities Litigation Reform Act ("PSLRA"), which, among other things, imposes

heightened pleading requirements for Exchange Act claims. *See Merrill Lynch*, 547 U.S. at 86

("SLUSA's stated purpose [is] 'to prevent certain State private securities class action lawsuits

alleging fraud from being used to frustrate the objectives' of the [PSLRA].") (quoting SLUSA §

2(5), 112 Stat. 3227).  Both the PSLRA and SLUSA focus on securities class actions; neither

concerns individual proceedings for violation of state or federal law.  *See* H.R. Rep. No. 105-

640, at 10 (1998) (the "solution" to circumvention of the PSLRA "is to make Federal court the

exclusive venue for securities fraud class action litigation"); *id*. at 8-9 (purpose of SLUSA was to

"establish[] uniform national rules for securities class action litigation involving our national

capital markets").  Explaining the term "covered class action," the Senate Report made clear that

"[t]he Committee does not intend for the bill to prevent plaintiffs from bringing bona fide

individual actions simply because more than fifty persons commence the actions in the same

state court against a single defendant."  S. Rep. No. 105-182 (1998).  That is, absent

consolidation, joinder, or other proceedings establishing a "single action," SLUSA is not

intended to bar state law claims.  SLUSA's concern is with class actions, which, in Congress's

view, pose the threat of *in terrorem* settlements.  That concern does not relate to individual

actions such as this.

Another goal of SLUSA was "to prevent plaintiffs from seeking to evade the protections

that Federal law provides against abusive litigation by filing suit in State, rather than in Federal,

court." H. R. Rep. No. 105-640, at 8-9.  That directive does not address the situation here.

Indeed, far from attempting to "evade the protections of federal law," Plaintiff has availed itself

of the federal courts, and federal law, by opting out of the Consolidated Class Action and filing

its own direct proceeding in federal court.  Plaintiffs' addition of common law claims to be

litigated – which were not brought in the Consolidated Class Action – does not transform this

case into the type of action SLUSA is intended to preclude.

In sum, this individual action is not a "covered class action," and the Plaintiffs common

law fraud claims are not preempted.

### C.    PLAINTIFFS ADEQUATELY PLEAD RELIANCE FOR THE STATE COMMON LAW FRAUD CLAIM

Defendants' argument that the Lord Abbett Funds have not sufficiently pled reasonable

reliance with respect to the common law fraud claim fails.  (Joint Motion at 17-20).  Under New

York law, "[t]he pleading requirements for reliance are minimal on a motion to dismiss, and it is

generally premature to decide the question at the pleading stage."  *Allstate Ins. Co. v. Ace Sec.*

*Corp.*, No. 650431/2011, 2013 WL 1103159, at *14, 2013 N.Y. Misc. LEXIS 3531, at *33 (N.Y.

Sup. Ct. Mar. 14, 2013) (citation omitted).  On a motion to dismiss for failure to state a cause of

action, a plaintiff "need only plead that he relied on misrepresentations made by the defendant . .

. since the reasonableness of his reliance [generally] implicates factual issues whose resolution

would be inappropriate at this early stage."  *AMBAC Assurance Corp. v. First Franklin Fin.*

*Corp.*, No. 651217/2012, 975 N.Y.S.2d 707; 2013 N.Y. Misc. LEXIS 3092, at *20-21 (N.Y. Sup.

Ct. July 18, 2013) (quoting *Knight Secs., LP v. Fiduciary Trust Co*., 5 A.D.3d 172, 173 (1st

Dept. 2004)).[6]

---

[6] *See also Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 304-305 (S.D.N.Y. 2011)
("[B]ecause 'reasonable reliance is always nettlesome because it is so fact-intensive' plaintiffs'
motion to dismiss based on unreasonable reliance is denied."  (citing *Schlaifer Nance & Co. v.*

Plaintiffs have pled that they received and read the allegedly misleading statements at issue, that they believed them, that they relied upon Defendants' representations and assurances regarding the strength of AIG's balance sheet (including AIG's exposure to subprime assets and CDS risks) in making their investments, and that they would not have purchased or acquired the securities as they ultimately did but for Defendants' misrepresentations and omissions.  ¶507, ¶657.[7]  That is sufficient to plead reliance with particularity.  *See, e.g., Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 598-99 (S.D.N.Y. 2008) (allegations that plaintiffs heard alleged misrepresentations, believed them, and made investment decisions in reliance on them were sufficient to plead reliance); *Transit Rail, LLC v. Marsala*, No. 05-cv-0564, 2007 WL 2089273, at *7, 2007 U.S. Dist. LEXIS 52822, at *21, 25, 35 (W.D.N.Y. July 20, 2007) (denying motion to dismiss Section 10(b) and common law fraud claims, stating for element of reliance that "at the pleading stage, the plaintiff must simply allege that it relied on the defendant's statements or omissions made in connection with the purchase or sale of securities, and that this reliance was the proximate cause of the injury suffered"); *see also Emergent Capital Inv. Mgmt, LLC v. Stonepath Group, Inc*., 343 F.3d 189, 197 (2d Cir. 2003) (reliance "is established simply by showing that, but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction.").

Moreover, to plead a fraud claim with particularity under Rule 9(b) only requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the

---

*Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997))); *Doehla v. Wathne Ltd., Inc.,* No. 98 Civ. 6087, 1999 U.S. Dist. LEXIS 11787, 1999 WL 566311, at *10 (S.D.N.Y. Aug. 3, 1999) ("Whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss.")).

[7] All references to "¶__" are to paragraphs of the Complaint filed by Plaintiffs on February 2, 2015 (Dkt. No. 1).

speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quotation omitted).

Defendants never argue that it was unreasonable for Plaintiffs to rely upon the alleged misrepresentations, or that Plaintiffs knew or should have known the truth about the alleged misrepresentations. Rather, Defendants assert that Plaintiffs' allegations are too "generalized," and even assert that the Complaint fails to identify "any particular agent" that purchased the AIG securities in reliance on the alleged misstatements. (Joint Motion at 19). This argument fails because "Rule 9(b) does not require Plaintiffs to identify individual . . . employees who relied on the alleged misrepresentations." *Terra Sec. ASA Knkursbo v. Citigroup, Inc.*, 740 F. Supp. 2d 441, 454 (S.D.N.Y. 2010). That Plaintiffs do not identify the particular agents and employees who reviewed those documents "is a red herring and wholly inapposite here." *Id.*

Moreover, the cases upon which Defendants rely are inapposite. For example, Defendants' rely on *Devaney v. Chester*, 709 F. Supp. 1255, 1264 (S.D.N.Y. 1989), which was distinguished in *Landesbank Baden-Wurttemberg v. RBS Holdings USA Inc.,* 14 F. Supp. 3d 488, 511 (S.D.N.Y. 2014). The *Landesbank* court noted that:

> In [*Devaney*] — after four amended complaints and extensive discovery — the court dismissed plaintiff's action because of his inability to specify who had read and relied on a written statement allegedly made by the defendant. Here, by contrast, there has been no discovery . . . . The Complaint is sufficiently particularized.

*Id.* (citation omitted). Similarly, there has been no discovery in this action.

In *Matana v. Merkin*, the court found that there was no basis to believe that the plaintiff relied upon particular statements where the complaint pled "no facts to suggest that these subtleties would have been material to an investment holder, let alone that [plaintiff] actually relied on them in deciding to retain its investments." 989 F. Supp. 2d 313, 325 (S.D.N.Y. 2013).

20

*Matana* has no application here, where the Court has already held that the challenged statements and omissions "would have been viewed by the reasonable investor as having significantly altered the total mix of information[,]" and where Plaintiffs actually received and relied on those statements when purchasing AIG securities. *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 531 (S.D.N.Y. 2010) (quotation omitted).

In *In re Bear Stearns Cos. Inc. Sec., Deriv. and ERISA Litig.*, 995 F. Supp. 2d 291, 308-09 (S.D.N.Y. 2014), the plaintiff alleged that it only relied upon one document (a 2006 10-K), and did not identify any misstatements in that document that it relied upon when purchasing securities (which it did between March 2007 through March 2008). *See id.* at 309, 312-13.

In *Citigroup*, 822 F. Supp. 2d 368, plaintiffs merely pled in a conclusory fashion that they "reasonably relied on the Fraud Defendants' misrepresentations when deciding to purchase Citigroup's Securities[.]"  Unlike Plaintiffs here, the *Citigroup* plaintiffs did not plead that they had actually received and considered the documents at issue, or that they would not have purchased the securities as they did had accurate disclosures been made. *Cf.* ¶ 657.

Finally, *In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 644 (S.D.N.Y. 2008) dealt primarily with the question of whether common law fraud plaintiffs could rely on the fraud-on-the-market presumption to prove reliance.  The court did, however, note that allegations of direct reliance on particular statements suffices to plead reliance with particularity. *See id.* (citing *Hunt*, 530 F. Supp. 2d at 599).  Here, Plaintiffs have identified the particular false statements at issue and alleged their reliance on those statements.  ¶¶ 224-392, 507, 657.

In sum, Plaintiff have sufficiently alleged reasonable reliance at this stage.  Nevertheless, in the event that the Court finds that Plaintiffs have not met their burden, Plaintiffs respectfully request leave to amend their pleadings.  Federal Rule of Civil Procedure 15(a)(2) provides that a

court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2);

*see also Brown v. City of Oneonta,* 235 F.3d 769, 784 (2d Cir. 2000) ("plaintiffs are regularly

and properly given at least one chance to amend their complaint in response to a district court's

finding of inadequacy").

## V.   <u>CONCLUSION</u>

     For the reasons set forth herein, Defendants' Joint Motion to Dismiss should be denied in

its entirety.

Dated: May 14, 2015                           Respectfully submitted,


       /s/ *Mitchell M.Z. Twersky*
_____

ABRAHAM, FRUCHTER & TWERSKY, LLP
Mitchell M.Z. Twersky (MT-6739)
Jack Fruchter (JF-8435)
Atara Hirsch (AH-6771)
One Penn Plaza, Suite 2805
New York, New York 10119
Tel:     (212) 279-5050
Fax:     (212) 279-3655
*mtwersky@aftlaw.com*
*jfruchter@aftlaw.com*
*ahirsch@aftlaw.com*

       and

Ian D. Berg (admitted *pro hac vice*)
Takeo A. Kellar (admitted *pro hac vice*)
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 792-3448
Fax:     (858) 792-3449
*iberg@aftlaw.com*
*tkellar@aftlaw.com*

*Attorneys for Lord Abbett Affiliated Fund, Inc.;*
*Lord Abbett Series Fund, Inc. - Growth &*
*Income Portfolio; Lord Abbett Series Fund, Inc.*
*- Classic Stock Portfolio; Lord Abbett Research*
*Fund, Inc. - Lord Abbett Calibrated Dividend*
*Growth Fund; Lord Abbett Securities Trust -*
*Lord Abbett Fundamental Equity Fund; And*

*Lord Abbett Global Fund, Inc. - Lord Abbett
Multi-Asset Global Opportunity Fund*